Nichols, C. J.
The question involved in this’case is whether, under Section 3812, General Code, as it now reads, a municipality availing itself of the right tó levy and collect special assessments for street improvements by the third method prescribed in said section, may assess a corner lot for the full number of feet it abuts on the improvement, or whether the so-called “real” front, as defined in the doctrine announced by this court in Haviland v. Columbus, 50 Ohio St., 471, is to limit the liability of the corner-lot owner.
This question has had a very interesting history in Ohio, both judicial and legislative. The so-called third method as it existed in 1893, when the Haviland case was decided, read “by the foot front of the property bounding and abutting upon the improvement.” The only change in this method through legislative channels was had in 1902, at the time of the adoption of the municipal code, and the change on this occasion was the substitution of the word “frontage” for “front.” For eight years thereafter the language remained unaltered. In 1910, however, the legislature restored the word “front” and eliminated “frontage” from the act.
By a divided court the rule established in the Haviland case was that “if a lot abuts lengthwise on the improvement, but fronts breadthwise on another street and not on the improvement, the lot should be deemed as fronting breadthwise on the improvement, and be assessed for the number of *249 feet on the improvement that it would have in such case, and no more,” as, for example, if X owns a lot at the corner of A and B streets, 50 feet on A and 150 feet on B, the 50 feet being its breadth and 150 feet its length, and B street is being improved, X can be assessed for only 50 of his 150 feet abutting on B street and the interior-lot owners on B street must of necessity participate in the additional assessment, and X’s additional 100 feet is improved substantially at his neighbors’ expense. This doctrine was not long allowed to remain unassailed, but within a period of two years it was again before the supreme court in the case of City of Toledo v. Sheill, 53 Ohio St., 447, and most vigorously challenged.
The court at that time was composed of six judges, of whom three adhered to the decision of the Haviland case without qualification, two dis-' sented, and the sixth, Spear, J., who was a member of the court at the time of the decision of the Haviland case, says of the Haviland case (see 53 Ohio St., 459): “It received, at the time of its rendition, neither the assent of my judgment nor my vote,” he concurring, however, in the reaffirmation of the doctrine for the reason, as he says, that he felt that the maxim of stare decisis should control.
The doctrine of the Haviland case was by force of necessity acquiesced in by the people of Ohio until the change by the legislature in 1902 of the word “front” to “frontage.” The corner-lot agitation was at once revived, some saying at that time that it was the mere grasping at a' straw; *250 nevertheless the result was the setting aside of the doctrine established in the Haviland and Sheill cases, and in the case of Village of Oakwood v. Stoecklein, 81 Ohio St., 332, the rule was laid down that municipalities were authorized to assess upon an entire lengthwise frontage of a lot abutting upon the improvement as well as its breadth-wise frontage.
The Stoecklein case was decided in January, 1910. Within ninety days thereafter the legislature of Ohio, then in its regular biennial session, reamended Section 3812, General Code, in several particulars, among others by substituting the word “front” for “frontage,” thus restoring the act to its original form and phraseology as it existed at the time the supreme court construed it in the Haviland case.
This circumstance or coincidence, whatever it may be termed, has been seized on by the advocates of the Haviland-case doctrine as striking and unanswerable evidence of legislative intendment, and it is urged with great earnestness and much force in the case now under consideration that the legislature thereby not only manifested its disapproval of the doctrine of the Stoecklein case, but with deliberation and yet with despatch removed the ground from under the supreme court upon which the court rested in the Stoecklein case. It is now urged upon the court that the reamending of Section 3812, in 1910, amounted in effect to a setting aside of the rule of the Stoecklein case, and the lower courts in the case at bar have so regarded it; at least both the court of common pleas *251 and circuit court disregarded the rule of corner-lot assessments established in the Stoecklein case and readopted the rule of the Haviland case.
This court now feels, in view of the peculiar state and history of the legislation and of the judicial construction touching the subject in controversy, that it is confronted with the plain duty of considering the question de novo.
While the doctrine of stare decisis might be invoked as a strict sequence from the Haviland and Sheill cases, supra, and the reasoning of the court in the Stoecklein case, together with the legislation immediately following the decision of the latter case, yet it cannot be denied that there never has been such approval of or acquiescence in the doctrine of the Haviland case as stare decisis is supposed to produce. The court is also influenced to indulge in freedom to deal with the question anew, for the reason that, while the rule affects property rights to the degree that the assessment is directly against the property, still it is not a rule of property relating to the title itself.
There is still another consideration of potency. Among all our sister states Ohio stands alone in its adoption of the rule as laid down in the Haviland case. Construction of similar statutes in every other state where the question has been presented has evolved the doctrine of the Stoecklein case, regardless of any refined distinction in the meaning of the two terms “front” and “frontage.” And finally, it is generally felt by the citizens of our state that the rule of the Haviland case has worked injustice to a greater or less degree in most every municipality of the state, and it is cer *252 tain that it has been the source of much irritation in every community where street and sidewalk improvements have been made. Moved by these considerations, the court is prompted to consider • the corner-lot question on its merits, unhampered by the stare decisis doctrine.
In doing this the court would not wish to be understood as in the slightest manner discrediting this salutary and long-established doctrine.
The doctrine of precedents owes its origin and observance to a recognition of the necessity for stability and uniformity in the construction and interpretation of the law, and no argument is necessary to support the view that the administration of justice calls for well-settled rules in such matters, but, as observed by Bartley, C. J., in the case of Leavitt & Lee, Exrs., v. Morrow, 6 Ohio St., 78: “Precedents are to be regarded as the great storehouse of experience; not always to be followed, but to be looked to as beacon lights in the progress of judicial investigation, which, although, at times, they be liable to conduct us to the paths of error, yet, may be important aids in lighting our footsteps in the road to truth.”
And where the original decision has been rendered by a divided court and the question involved is not strictly one relating to property title, and there exist grave question as to the logic or equity of such established rule, the court can not stand bound and fettered, helpless to remedy an injustice if one exists. For, as observed by the same learned judge in the Leavitt case, supra, “Mere precedent alone is not sufficient to settle and establish forever, a legal principle. Infallibility is to *253 be conceded to no human tribunal. A legal principle, to be well settled, must be founded on sound reason, and tend to the purposes of justice.” The court in the Leavitt case set aside a rule of law which had been recognized and followed for over two centuries. In this connection, the case of Willis v. Owen, 43 Tex., 41, referred to by Davis, J., in his opinion in State v. Lewis, 69 Ohio St., 209, may appropriately be quoted from again, where it says: “The questions to be considered in these cases have no application whatever to the title or transfer of property, or to matters of contract. They involve the construction and interpretation of the organic law, and present for consideration the structure of the government, the limitations upon legislative and executive power, as safeguards against tyranny and oppression. Certainly, it cannot be seriously insisted, that questions of this character can be disposed of by the doctrine of stare decisis. The former decisions of the court in such cases are unquestionably entitled to most respectful consideration, and should not be lightly disregarded or overruled. And in case of doubtful interpretation, * * * or even legislative or executive construction within the sphere of their respective functions, might be sufficient to turn the balanced scale. But in such case the former decision or previous construction is received and weighed merely as an authority tending to convince the judgment of the correctness of the particular conclusion, and not as a rule to be followed without inquiry into its correctness.”
*254 The question for the court’s present consideration is not so much what the legislature had in its mind by the changing of the language from “front” to “frontage” and then back again, but calls for a fair construction of the statute as the language now exists, plain, explicit and unequiv- ■ ocal.
The rule established in the Haviland case, considered in the light of reason and from the experience of the several communities of the state since its promulgation, must now be held illogical, inequitable and mischievous, and must no longer prevail, regardless of the doctrine of stare decisis and the due force and respect that must be accorded the legislative intent.
It is the plain duty of the court to see that reasonable uniformity is observed in the imposition of the burden of assessments among all property owners. It must be conceded on all sides that the Haviland-case rule is a hard rule — one strongly calculated to raise murmurings and discontent, and it must likewise be conceded that the exercise of the power of assessment under this rule has been grossly oppressive to interior-lot owners; and so, without pursuing the subject at greater length, the majority of the court is quite content to adopt as the best line of reasoning on the subject the able dissenting opinion of Shauck, J., as announced in the Sheill case, supra, and to hold that the plain meaning of the term “front” as employed in Section 3812, General Code, is the real and actual frontage, both lengthwise and breadthwise.
If the legislature would write into the statute the construction of Section 3812, General Code, *255 which counsel for defendant in error asks, it would require the court to hold the statute itself unconstitutional.
If Section 3812 specifically provided that in the matter of street improvement the municipality could, in assessing corner lots, only require their owners to answer to an assessment on the lengthwise front equal to. the number of feet fronting on the breadthwise front, and provided further that such deficiency in assessment should be substantially contributed by the interior-lot owners on the street being improved, we would be constrained to hold such statute as being in contravention of Section 2, Article XII, requiring the taxation of property by a uniform rule, and of Section 6, of Article XIII of the Constitution of Ohio, restricting the power of assessment by municipalities so as to prevent the abuse of the power; since such a manifestly discriminating assessment would be an illegitimate and unauthorized exercise of the taxing power.
Where two constructions of a statute are available it is the time-honored and logical rule' to give such construction as will maintain the constitutionality of the act.
We therefore hold that the language in Section 3812, which reads “by the foot front of the property bounding and abutting upon the improvement,” means and is to be construed as meaning that corner-lot owners are to be assessed for the full frontage of their lots abutting or bounding on the improvement, whether lengthwise or breadth-wise, and this holding is made disregarding any *256 distinction as to the technical meaning of the terms “front” or “frontage.”

Judgment reversed and judgment for plaintiff in error.

Shaucic, Johnson, Wanamaker and Wilkin, JJ-, concur.